IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN A. MATO, | : | |
| CHERIE B. MATO | : | |
| and | : | |
| MERC INVESTMENT CORP. | : | CIVIL ACTION |
|     Plaintiffs | : | |
| | : | |
| v. | : | NO. 10-7617 |
| | : | |
| WINDOW WORLD, INC., | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                                              **February 28, 2011**

      The defendant in this action, Window World, Inc., has filed a motion to dismiss or in the alternative, to transfer this action to the Western District of North Carolina. For the reasons set forth below, the motion to transfer will be granted.

**I.     BACKGROUND**

      Plaintiffs Robin Mato, Cherie Mato, and Merc Investment Corporation ("the Matos") are former licensees of Window World Philadelphia. They filed their complaint against defendant Window World, Inc. ("Window World") on December 30, 2010, and moved for a preliminary injunction on January 4, 2011.

      The facts alleged in the complaint are as follows: the Matos are Window World licensees pursuant to a Licensing Agreement entered into between the parties on November 16, 2005. Compl. ¶ 1; Licensing Agreement ("Agreement"), Pl.'s Ex. A. The Agreement was to last for a five year term, so it expired on November 16, 2010. Id. With

respect to renewal of the license, the Agreement provides that:

> If LICENSEE is not in any manner in default hereunder, under the conditions set forth herein and with the written consent of the LICENSOR, LICENSEE may renew this Licensing Agreement for successive renewal terms of five (5) years each. LICENSEE must provide LICENSOR with written notice of LICENSEE'S intention to renew not less than six (6) months nor more than twelve (12) months prior to the expiration of the initial term[.]"

Agreement, ¶ 2(c). The Matos did not provide written notice to Window World of their intent to renew within the period set forth in the Agreement. Compl. ¶ 13. However, on November 17, 2010 (the day after the Agreement expired) Window World President Blair Ingle contacted plaintiffs and asked whether they wanted to renew the Agreement. Id. at ¶ 14. The informed him that they did, and as a result, both parties "continued to operate pursuant to the terms of the [Agreement]." Id. at ¶ 15. On November 19, 2010, Ingle sent the Matos a "Request to Renew License" form, which they completed and returned to Window World three days later. Id. at ¶¶ 16-17. On November 28, 2010, they complied with Window World's request for financial information about the franchise. Id. at ¶ 18. On December 5, 2010, Window World informed the Matos that it did not intend to renew the Agreement for another five year term. Id. at ¶ 20. On December 23, 2010, Window World provided written notice that the Agreement would terminate on January 1, 2011. Id. at ¶ 21; Termination Notice, Pl.'s Ex. B.

The Matos filed suit against Window World alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The Matos are Pennsylvania

residents and Merc Investment Corporation is a Pennsylvania corporation. Window World is a North Carolina corporation with its principal place of business in North Carolina. Therefore, this court properly has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

Window World has filed a motion to dismiss or, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a). In support of its motion for transfer, Window World cites language in the Agreement stating that:

> [T]his Agreement shall be governed by the laws of the state of North Carolina.
> . . .
> The LICENSEE and LICENSOR hereby agree that in the event any dispute arises regarding this Agreement, either the North Carolina Superior Court for the 23rd Judicial District or the United States Federal Court for the Western District of North Carolina shall have jurisdiction over any such dispute(s) and the parties agree that one or the other of these courts would be the proper venue for the resolution of any legal or equitable dispute which may arise from this Agreement.

Agreement ¶ 13(e).

## II. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) applies when venue is proper both in the district originally chosen and in the proposed transfer district. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer

according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). A defendant moving for transfer under Section 1404(a) normally bears the burden of showing that its requested venue is proper, that it would be more convenient for the parties and the witnesses, and that transfer is in the interest of justice. 28 U.S.C. § 1404(a); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). "Transfer is not warranted if the result is merely to shift the inconvenience from one party to the other." Nat'l Paintball Supply, Inc. v. Cossio, 996 F.Supp. 459, 463 (E.D.Pa. 1998) (citing Vipond v. Consol. Rail Corp., No. 94-2147, 1994 WL 534808 (E.D.Pa.1994)).

In deciding whether transfer is appropriate, courts consider a number of other specific private interest factors, which may include: (1) the plaintiff's forum preference as manifested in its original venue choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may actually be unavailable for trial in one of the fora; and (6) the location of books and records necessary for litigation. Jumara, 55 F.3d at 879 (internal citations omitted). Relevant public factors are: (1) the enforceability of the judgment; (2) practical considerations that could affect the ease or expense of trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of

the trial judge with the applicable state law in diversity cases. Id. at 879-80.[1]

The presence of a forum selection clause does not invite a court reviewing a motion to transfer to dispense with the Jumara factors.[2] However, it does change the nature of a court's inquiry into those factors:

> Within [the framework of the Jumara factors], a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Hence, within the framework of § 1404, Congress 'encompasse[d] consideration of the parties' private expression of their venue preferences.' Although the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration. Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue. Where the forum selection clause is valid . . . the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.

Jumara, 55 F.3d at 880 (internal citations omitted). Therefore, in assessing whether to transfer a case to another district pursuant to a forum selection clause, the forum court must consider whether the clause is valid, whether the action could properly have been brought in the proposed district, and whether, in the context of the Jumara factors, the party opposing transfer has met its burden of showing that transfer to the mutually selected district is inappropriate.

---

[1] These factors were originally set forth by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

[2] The effect of a forum selection clause in federal court is governed by federal law. Jumara, 55 F.3d at 877-878.

## III. DISCUSSION

The Matos do not argue that the forum selection clause in the Agreement is invalid for any reason. Nor do they argue that this action could not properly have been brought in the Western District of North Carolina. Because Window World has its principal place of business in North Wilkesboro, North Carolina, which is within the Western District, this action could indeed properly have been brought there.

### A. Weight of Forum Selection Clause

In opposing Window World's motion to transfer, the Matos claim initially that, because the forum selection clause in the Agreement is permissive and not mandatory, it should be given reduced weight. They are correct that courts must distinguish between permissive forum selection clauses merely authorizing venue in the mutually selected forum, and mandatory clauses indicating that venue is proper only in the selected forum. See Campanini v. Studsvik, No. 08-5910, 2009 WL 926975 (E.D.Pa. Apr. 6, 2009) (citing K & V. Scientific Co. v. BMW, 314 F.3d 494, 498 (10th Cir.1992)); De Lage Landen Financial Services, Inc. v. Elite Technology (N.Y.), Inc., No. 09-1538, 2009 WL 3152163 (E.D.Pa. Sep. 30, 2009). They are also correct that permissive forum selection clauses are given less weight in the transfer inquiry than are mandatory ones. See Feldman v. Google, Inc., 513 F. Supp. 2d 229, 245-46 (E.D.Pa. 2007).

As noted in DeLage, a permissive forum selection clause is one which authorizes

one party to choose a particular venue. A permissive clause stating that "YOU consent to and agree that personal jurisdiction over YOU and subject matter jurisdiction over the Equipment *may* at OUR *option* be with the Courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania" was present in that case. DeLage, 2009 WL 3152163 at *4 (emphasis added). The words "may" and "option," Judge Savage noted, distinctly convey permissiveness. Id. However, in Campanini, the court confronted a forum selection clause stating that "[t]he construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of Tennessee without regard to the state's laws regarding the conflict of law. The parties agree that venue shall be any court of competent jurisdiction in Knoxville, TN." 2009 WL 926975 at *4. Judge Schiller found that clause to be mandatory, because "[a]lthough Plaintiff claims that the relevant clause 'does not expressly state that venue is exclusive,' the Court sees no other way to interpret language that the parties 'agree that venue shall be any court of competent jurisdiction in Knoxville, TN.'" Id.; see also Wall Street Aubrey Golf, LLC v. Aubrey, 189 Fed. Appx. 82, 85-86 (3d Cir. 2006) (finding that a forum selection clause does not have to contain the words "exclusive" or "sole" to be mandatory.)

In arguing that the forum selection clause in the Agreement is analogous to the one in DeLage, the Matos focus on the portion of it stating that the Superior Court of North Carolina or the Western District of North Carolina "would be the proper venue for the

resolution" of disputes arising from the Agreement, without noting the use, in the previous sentence, of language almost identical to that in Campinini: "either the North Carolina Superior Court for the 23rd Judicial District or the United States Federal Court for the Western District of North Carolina *shall* have jurisdiction over any such dispute(s)[.]" Agreement, ¶ 13(e) (emphasis added). Although the Matos are correct that the clause in their Agreement, like the one in Campanini, does not specifically state that North Carolina is the exclusive venue, it also fails to use markedly permissive language. Although it does not state that venue shall be in North Carolina, it does state that jurisdiction shall be in North Carolina. Other courts to analyze such language "have found that clauses that use the term 'jurisdiction,' as opposed to forum or venue, are properly regarded as forum selection clauses." Frazetta v. Underwood Books, No. 08-0516, 2009 WL 959485 at *2 (M.D.Pa. Apr. 6, 2009) (citing Atl. Tele-Network Inc. v. Inter-American Dev. Bank, 251 F.Supp.2d 126, 133 (D.D.C.2003) and Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1209 (3d Cir.1991)).

Because the clause before me contains no permissive language and states that North Carolina state court "or the United States Federal Court for the Western District of North Carolina shall have jurisdiction" over disputes arising from the contract, it is proper to interpret the Agreement to contain a mandatory forum selection clause designating the Western District of North Carolina as the venue for this action. Therefore, this Court need not give it less weight than the "substantial consideration" set forth in Jumara.

However, even if this were not the case, and the clause were given less weight, the Matos still fail to show that relevant Jumara factors tip the scales towards keeping the case here.

### B. Relevant Jumara Factors

#### 1. The Parties' Choice of Forum

Typically in considering a transfer request, a plaintiff's choice of forum "is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum." Blanning v. Tisch, 378 F.Supp. 1058, 1060 (E.D.Pa. 1974) (citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)). However, as set forth above, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Jumara, 55 F.3d at 880. Therefore, the plaintiffs' choice of venue is no longer entitled to deference and they now "bear the burden of demonstrating," in the context of the Jumara factors, "why they should not be bound by their contractual choice of forum." Id.

#### 2. Whether the Claim Arose Elsewhere

The parties appear to agree that this claim did not clearly arise in one district more than another. The Matos run their Window World franchise in the Eastern District of Pennsylvania, Compl. ¶ 8, but Window World, a North Carolina corporation, is accused of terminating the licensing agreement. This factor favors neither party.

### 3. Convenience of Parties and Witnesses

It is the convenience of the parties upon which the Matos rely most heavily in opposing Window World's motion to transfer. A court considering a motion to transfer must determine whether either forum is more convenient for the parties "as indicated by their relative strength and financial condition." Jumara, 55 F.3d at 879. The Matos argue, through submission of an affidavit from Robin Mato, that because their business is smaller and they do not have Window World's financial resources, this factor weighs in their favor. Specifically, Robin Mato attests that their franchise is "a small, family owned business" that employs one person in addition to Robin and Cherie Mato, and thirteen independent contractors. Mato Affidavit, ¶¶ 3-4. Mr. Mato invites the court to compare the Matos' situation to that of Window World, a national company with a private jet, that will make travel to and from Philadelphia for purposes of this litigation easy. Id. ¶ 10. They claim they will be out of business beginning March 1, 2011, when they complete the last of the window installation orders taken pursuant to the Agreement. See id. at ¶¶ 8-10. Mr. Mato additionally argues that transfer of this case to North Carolina will be prohibitively expensive because the Matos will have to hire counsel in North Carolina and attend hearings and depositions there, and will "be away from our business or any replacement business we start while traveling, which will further harm us[.]" Id. at ¶ 11.

I do not find this statement convincing. The Matos simultaneously argue that they will be out of business soon and need to stay in Pennsylvania to monitor "any replacement

business"; they refer to litigation costs that should not be exorbitant, and they fail to recognize that, in large part, the viability of their complaint will likely depend on a court's interpretation of the communications between the parties and the terms of their Agreement. The Matos do not present a strong argument that they will be prohibitively inconvenienced by travel to North Carolina, should it be required.

Convenience of the witnesses is to be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Because "party witnesses are presumed to be willing to testify in either forum despite any inconvenience . . . [t]he convenience of non-party witnesses is the main focus" for this factor. Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). Neither side has alleged that there are non-party witnesses who will be greatly inconvenienced by transfer. Because this case largely appears to be a matter of contractual interpretation, it is unlikely that there will be numerous, or any, non-party witnesses.

### 4. Location of Books and Records

The location of books and records relevant to the litigation should be considered in deciding a motion to transfer "to the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879. Neither party has argued that the books and files relevant to this matter cannot be produced in the alternative forum.

C.  **Public Factors**

Relevant public interests to consider in the context of a motion for transfer include (1) the enforceability of the judgment; (2) practical considerations that could affect the ease or expense of trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d at 879-80.

I will consider these factors together. Window World argues that, because the Agreement is governed by North Carolina law, the federal court in the Western District of North Carolina would be more familiar with the laws of that state. I agree, and because the Agreement provides that it is to be interpreted under North Carolina law, the Western District of North Carolina will be better equipped to interpret its terms. Window World also argues that the Western District of North Carolina is significantly less congested than the Eastern District of Pennsylvania, making it administratively more convenient for this case to be transferred. This, too, is true.[3] The Matos do not respond to these arguments, instead focusing almost exclusively on their own convenience.

---

[3] The defendants are correct in asserting that the total number of pending civil and criminal cases per Judge in the Western District of North Carolina is significantly less than that number per Judge in the Eastern District of Pennsylvania. For the period ending September 30, 2009, there were 2,164 civil cases filed, per Judgeship, in the Eastern District of Pennsylvania. In the Western District of North Carolina during the same period, there were 236. See http://www.uscourts.gov/cgi-bin/cmsd2009.pl

## IV. CONCLUSION

The presence of a forum selection clause is to be given substantial weight in determining whether transfer to another district is appropriate. Plaintiffs seeking to escape the terms of such a clause face a heavy burden. Here, the Matos do not claim that the forum selection clause at issue was not freely entered into and do not claim that it is anything other than valid and enforceable. Rather, they rely largely on equitable arguments that, as the party with fewer financial resources, they face a heavier burden in complying with the clause than the defendant does. I find that none of the Jumara factors weigh so strongly in favor of keeping this case in the Eastern District of Pennsylvania that the parties' contractually agreed-upon choice should be set aside. This is a contract interpretation and waiver matter which should not require extensive discovery. Should this case be transferred to North Carolina, the District Court there may decide to grant Window World's motion to dismiss, making the expense of litigation a non-factor. Therefore, I will grant the motion to transfer and refrain from ruling on Window World's motion to dismiss. An appropriate order follows.